Senator ready? Can the court hear me? Good morning. Can you hear fine? Yep. And Mr. Is it alley you how to use this? Is that correct? How do you use? It's a new list. Okay. Okay. You can hear this. I assume you want to proceed. Yes. Good morning, Your Honor. It's nice to be back before the court again, post pandemic again, but still on zoom. I'd like to reserve three minutes for rebuttal. Okay. It's time to miss him behalf of Mr. This morning. We're back before the court this morning. Remand from this court's decision Bedrosian to after the lower court initially found declined to find willful conduct. And we're dealing with F bar penalties here, foreign bank account reporting penalties. The court determined that it wasn't clear whether the district court had applied the correct standard. The case went case went back on remand. Yeah, I excuse me. I think we're all pretty familiar with the procedural history here, Mr. Comiskey. And if I could, I'd like to start with one of the issues you've raised in particular that the district court here exceeded the mandate from the decision of the earlier panel. Now, as a as an old district court judge, I took those things very seriously. And I'm trying to figure out how in any way Judge Bailson here exceeded the mandate. He received what was at least a clarified state standard. He was directed to conduct proceedings. I emphasize that consistent with the foregoing opinion. He did so. He made some additional findings, I think five additional findings and then ruled. How how is that an exceeding of the mandate? The Your Honor, our the our position is that he made findings which were contradicted his prior findings on the same record without entertaining or taking any new evidence. And the court instructed him to take the findings he had applied to this court's new determination of law on how to determine Excuse me, stop right there. Are you saying that he opposed finding to the one he made before? No, no, no, no, no, no, no, no, no findings is a specific word of art. That is a determination of fact by district court or by a fact finder. And that's what he did. You're saying they were opposed to what he previously done? Yes, he defined the very first finding your rock, which is the cooperation with the government, which this court emphasizes negating willfulness began only if it was exposed as having hidden foreign accounts. He used the wrong standard for defining willfulness. That was that was the problem. What is willfulness? That's where the problem played. If willfulness has a expanded definition, which includes reckless, and you send it back, you have to make new you've got to look at it fresh. Yes, you have to make new ultimate finding. But what you can't do, Your Honor, is take the same record and argue, take the facts he had in the record. But decide before his earlier opinions, who says what? Are you saying he he needed to expand the record? The either he? No, we're not sending you to expand it. But he couldn't change the word. Your Honor said the government had not begun its investigation of Mr. Bedrosian, and he did not know that UBS had turned information over the address. That's his prior finding. And his first opinion, he now makes a finding diametrically opposed to that. That's what we think he cannot do and could indeed, and which was improper. And the record doesn't support it. He could go back to the record and say I made a mistake. And I read those facts wrong. But he to one he made the on the initial his initial willing to get to the result that there was reckless conduct here. There's and there's more than one. That's just the first one. The second one, the second finding he makes is that the is that Mr. Bedrosian spoke to his prior account. And, and, and that the whatever the discussion was about UBS, and whatever the journal that was in the 90s, and the court said in its prior opinion, on that point, whatever the facts are on that point, it's not before the court any prior violation, rather, the issue was 2007. So that finding, in our view, doesn't mean anything. And the court when you know, it's before he say, let me let me try this in an orderly fashion, if I may, do you agree that there were five supplemental findings made? Yes. All right. One of those findings was that Mr. Bedrosian, his cooperation with the government began only after his undisclosed Swiss bank account came to light. That's one of them, isn't it? That's the one I was referring to. Yes, sir. And well, how does that conflict? How? How? How is it in any way contradictory? The record reflects that Mr. Bedrosian hired counsel, he hired a Swiss counsel, he began the process of filing amended returns all before he was told that his name might be turned over. And that's what the court found in its original opinion. And in this, and the new opinion, the court comes up with a diametrically opposed and contradictory finding, which isn't supported by the record, and was also not supported in the court's prior opinion. That's what we think the court could not do. And what about just go through the kind of just go through these findings, in fact, because I think Judge Smith's on something. Yeah, that's what I was about to do with the filing of the 2007. You agree that was a supplemental finding? Yes, the the five. I just I just went over the firm finding shortly. Now the second finding on the letters to Switzerland, he alluded to and mentioned in his prior opinion, and said, he still decided that Mr. Bedrosian had acted negligently. So he made a new finding, but it was in the prior opinion as well. So again, there is no finding. But that was like he relied upon in finding negligence for both sides. The third finding on the Wall Street Journal article again, was from conduct in the 90s, nowhere near 2007. And in the first opinion, the district court said that finding was of no moment in finding willfulness or recklessness. But the finding there was, quote, Bedrosian does not dispute he saw an article in the Wall Street Journal about the federal government tracing mail coming into the United States and therefore alerted to the possibility of the United States filing finding out about his foreign bank accounts if the bank sent information through the mail. That's the finding. That's, that's correct, your honor. And the 2007 report, that's the mid 90s. And the court had referenced that in the prior opinion. Yeah, but the court is trying to fit everything now within the Kerrigan test that we were that that we adopted in the prior Bedrosian decision. Safeco. And, and so, or actually was preceded Safeco. But the point being, he's now saying, okay, here's the test. I'm going back and here's the findings. Are you that none of these five findings are incorrect, are they? No, the point is, are we think the first finding is incorrect, your honor. That's the point. That finding is absolutely incorrect. Which, which, which, which of the five findings you think is incorrect? Mr. Bedrosian's cooperation started after he was exposed as having foreign bank accounts. We believe that's incorrect. Well, five findings I have in the 1990s, his accountant Handelman advised that he had been breaking the law every year that he did not report the Swiss account. Is that you don't disagree with that finding? Do you? No. That was the second finding is shortly after this 2007 F bar Bedrosian sent two letters to a Swiss bank directing closure of the two accounts. But only one of those accounts had been disclosed on his F bar. Is that correct? That's correct, your honor. And then I previously read the finding with respect to the Wall Street Journal, which you say is not incorrect. And the fourth finding is Bedrosian Swiss accounts were subject to a mail hold. He does not dispute the existence of the mail hold, or that he assigned a form and paid a fee to the bank for that benefit. Is that correct? That's correct. And it was also on the prior opinion. And then finally, he Bedrosian acknowledged that he was aware of the significant amount of money held in his foreign bank accounts. Is that correct? That's correct, except that we view the significance of that and disagree with the significance. The F bar in these years, your honor, was in boxes, you didn't give exact amounts of the account you gave between there were between less than 200,000 200,000 to a million and over a million. Mr. Bedrosian acknowledged that over a million, but a good chunk of that second bank account was alone. And the testimony at the trial was if you the loan is not his. So when you go back to you're already checking off a box up to a million. The first account was 200,000. You've got $800,000 of cushion before you get over a million. And our view is the that's that finding has no real significance. Because if you take out the loan, well, no, now we're going now now you're going to what the import of this evidence is. And I simply returned to the general inquiry I sought to pursue was, how is this somehow violative of the mandate to it? I mean, how did the district court somehow exceed the mandate? And after all of this, I failed to see how Judge Baleson exceeded the mandate. Okay, your honor, we did our preserve. Let me go to the argument that the case has to be remanded as for the penalty now before I run out of time. The court treated this as as a de novo review. Most of the courts now are treating it as review from an agency finding and subject to a district court acting as the appellate court. And both of that we were there was a motion to that Mr. Boudreaux was not allowed to get into why how the government didn't apply its mitigation guidelines or how the government came up with the 975 and what it relied upon. And the government does not have and did not was not able to rely upon the the numbers for the June 30th date, which is the date required under the FR, because they don't have records for the June 30 date. They relied on a, a, a, a document turned over by the bank, which was for the month of June, which is not June 30. And both the regulations and their manual required June 30. That alone requires an argue a remanded back to the agency to determine the appropriate number. How would they determine it? Excuse me, your honor? How would they determine if they don't have the numbers for June 30? Then how would they determine it if they must determine the amount as of June 30? The court excluded any testimonies for that. All they produced was the June a, a summary for the month of June, not June 30th. And the court permitted that to be introduced and with a conversion table. And that's how the court, the district courts found its penalty amount. It was not June 30th and under Schwartzbaum, which we cite in our supplemental materials, which just, which just came out, you have to use June 30th. There's no question about it. It's June 30th on the regulation. It's June 30th in the IRS guidance, and they didn't use June 30th. And we think frankly, a remand would be futile because they're not going to do any better. And the penalty requires structure is either a hundred thousand or the maximum amount or half the value of the account, but the higher number, either a hundred thousand or that half value. And without the number, you can't do either. And at a minimum, it has to go back to the agency only. Your honor, the court, you can't do either. Then what's the amount of the penalty? Is there no penalty? It's the IRS's issue. The penalty would have to be zero because they don't have the data this many years after the fact. Can I just go to another issue? You suggest that exhibit R is, is not inherently trustworthy. Why is that? Because it was, it had the data by month, not the data, which was required. It didn't have the day of June 30th, and there was no testimony of how they came up with the data. The data is further conflated because that account was in multiple currencies. It wasn't just U.S. dollars. And there was no testimony and no way to determine the data, how they got that number, even by month on that account, because there was no testimony provided at the one day hearing. Before, before going into the detail of what is in exhibit R, a couple more basic questions. First of all, is R in the record? Was R admitted? Did R become a part of the record before Judge Bales? I was not there for the trial, but as far as we know, it's part of the record. It is part of the record. All right. Beyond that, so, so we know it's in. That, what is it? And what does it purport to be? You can ask, you can ask the government, the government attorney. No, no, I'm, I'm, I'm asking if you know, I understand this is not, this may be something of a softball to you, but I'm at a loss to try to figure out what this thing is, knowing that it's already been admitted or part of the record. We have the same view, Your Honor. It's a, it purports to be a summary by month of the bank balance purportedly of Mr. Bedrosian's account. Is there anything on the document that links it to Mr. Bedrosian? There is not, Your Honor. I mean, as far as we know, could this be a bank record that applies to some other customer? Absolutely, Your Honor. And there was no testimony linked to Mr. Bedrosian at the trial. Well, I got one question for you at the trial, the opening statement at the trial, your counsel said, quote, now the government states, and we concede that at that time, this is, this would have been the month that's purportedly Exhibit R related to, although we don't see it on Exhibit R, there was a $2 million in that account, give or take. And that's what basically the government is claiming that it has, there was $2 million that wasn't disclosed to it. So therefore, it has the discretion to have a penalty up to half of that. How do you explain that statement at trial? That sounds to me like it's a pretty damning admission, isn't it? Well, we think he was a counsel, counsel was simply summarizing the government's position and not our position. He argued strenuously. Now the government states, and we concede, we concede that at that time, there were about $2 million in that account, give or take, you know. Yes, that's a toughie. Well, it's not, we don't think it's that tough, Your Honor. Let's go back to the basics. The answer to the complaint denied the government was do anything. Second, other than that admission, everything the government suggests to throw that out is on summary judgment to the court. Third, the way we understand the court's admission analysis, you have to be obtaining a benefit and then changing a position to where you already obtained a benefit. We lost below, we didn't win below, and we don't see the admission analysis in the cases as applying when you lost below and didn't obtain a benefit. And fourth, the district court didn't rely on this purported admission. It just said Mr. Bedrosian shouldn't have been surprised by the amount. But my question to you is what standard of review should we use to determine whether that statement was an admission? It's your reviewing the district court implicit finding that it was not, so it's abusive discretion. Okay, thank you. I have no further questions. Let me ask about another document. There was an amended F-bar that was filed, was there not? Yes, there was, Your Honor. And that came into the record, did it not? Yeah, we believe it did. All right, this is the 2000 F-bar, correct? 2007 F-bar.  And as I look at it, it makes a reference on the first page to an amount that's less than a million dollars, $100,000 to $1 million. In fact, that is a line 22C that appears to have an X through it. This is the smaller account, number 5316, you follow me? Yes, Your Honor. All right, so that's under review. But then when you go to the continuation page, the filing for the year 2007, here we're talking about the larger account, the, what is it, 6167, 6701. There, the 22D line indicates over $1 million. That's correct, Your Honor. So there's an admission here by your client of over a million dollars, is there not? Yes, in the amended F-bar. We think that goes to lack of willfulness. It's an amended document. Lack of willfulness? Yes, that he cooperated, hired outside people, filed a corrected F-bar after the fact. And if the district court did not or does not find it somehow evidence of lack of willfulness, why is this not a record upon which the district court could rely and that the service could rely for purposes of saying, okay, we've got over a million dollars admitted to by Mr. Fedrosian. At the very least, at the very most, we could find 50% of $1 million. It's not exactly, Your Honor, it's not exactly how it worked in those days. Again, under these boxes, the earlier account, as you saw, was overreported. They didn't put specific amounts on the, now you have the specific high balances on your foreign bank account report. Then you did not do that. You're just talking about evidence. We're talking about the rules of evidence. Why isn't this an admission to suggest that as of the date of this document, Mr. Fedrosian had over a million dollars? It is an admission he had over a million dollars, but it doesn't answer the question underneath that, whether the prior F-bar was willful by checking off one box less. Remember, you're talking information to the government. You're talking whether it's not a tax reporting form. You're talking whether they're informed sufficiently about a foreign account. And again, the original F-bar is filed off the $200 to $1 million box, because there was nothing in between. It overreported the earlier amount. It said there was a Swiss account. And the amended F-bar picked up accurately, as the first one in theory should have, the higher balance, but the total balances between those two accounts are about a billion, two million, three. In terms of information for the government and the significance of the information, a million isn't a big difference from a million, two, if you're going to start an audit of a taxpayer based on a voluntary filed foreign bank account report, which is why the district court in the first instance held it was negligent and it wasn't willful. They had information up to a million dollars already. But you're right. The second the amended F-bar is an admission that it was a million, over a million dollars between the two accounts as of June 30th. Doesn't have the highest balances. Doesn't have the exact amount. Over a million between the two accounts or over a million as to only that one account? That's correct, Your Honor. Yes. I have no further questions at this juncture. Same here. Mr. Commissioner, you did not reserve any time for rebuttal. And I think Patrick can let me know. I think he went over. Your Honor, I thought I had reserved three minutes at the beginning. Okay, Patrick, did you get that? Okay, fine. So we'll hear you back. Okay, thanks. Thank you, Your Honor. Mr. Lewis, if I pronounced that correctly, can you make any sense out of Exhibit R? What the heck is it? And how can you make any sense out of it in terms of setting an amount? Your Honor, my understanding is that Exhibit R is a portion of a document that was received from UBS as a result of the John Doe summons that was issued to UBS for production of records related to American account holders. You said that's your understanding, but what does this document purport to be? That's how documents go about being admitted into the record. They have to demonstrate something. Yes, Your Honor. The document purports to indicate balances of Mr. Bedrosian's 6167 account. Mr. Bedrosian's? Where does it indicate anything? There's no name on that page. Your Honor, that's correct. There is no name on that page. But as the documents were produced from the bank to the government, they contained Bates ranges. And all of the Bates ranges that are relevant to Mr. Bedrosian are included within... There's a certain Bates range that is related to his account. And the document Exhibit R is included within that Bates range. But there's no account number on what was produced, is there? I think the account you're looking for was 6167 for the larger account. Is that correct? That's correct, Your Honor. I don't see any account number on that page. In that Exhibit R. I don't even see a bank name. Right. Well, Your Honor, the documents that were produced with respect to Mr. Bedrosian came from UBS. Those are the documents that came from UBS. Yeah, but we're going to say if we assume that UBS has more than one depositor other than Mr. Bedrosian, how can we tie this exhibit to Mr. Bedrosian? Through the Bates range. I'm sorry, through the what? Through the Bates range. As we detail in our brief, there were numerous documents that were produced with respect to Mr. Bedrosian, a number of which do specifically refer to Mr. Bedrosian by name and refer to his account numbers by name, all of which are contained within the same Bates range. You go to the Bates numbers and then you relate those numbers to some earlier or even earlier and later sequence of Bates numbers. Is that what you're saying? They're all contained within the same range, Your Honor. And so some of the other exhibits that were also... The range is a series of numbers. Is that right? Correct. Yeah, so that's why I referred to numbers. So somehow we can fix this number or these numbers within the range that you're referring to. What is that range and how is it done? And how could we do it here? Your Honor, it's detailed in our brief. I don't have the numbers written down in front of me, but we do detail that in our brief as to how to examine the Bates range because of the other documents that were also admitted in evidence that are within the same Bates range. Was there any testimony from the trial explaining how the Bates numbers work and how the UBS certification for the Bates number ranges apply to certain individuals like Mr. Bedrosian? No, Your Honor, there isn't. But I would like to just take a step back for a moment and make the point that the government was not even required to submit this evidence in order to establish the determination of the penalty amount. The standard of review that's applicable here is whether the service abused its discretion in determining a penalty amount. And in that regard, it's Mr. Bedrosian's burden to prove that there was an abuse. I think there's a bit of nuance there. You have discretion to go up to 50% penalty. But the point is the 50% penalty has to hook onto a number. That number is what's the account balance. That's a factual issue. And we're asking you questions in connection with the factual issue as to whether a proper foundation has been laid. You don't just reach into the ether for a number. There has to be a number somewhere that is accessible from this record, both for Judge Bailson and for us. Well, this is not reaching into the ether. It's reaching into the documents that were produced to the government from UBS. Point us to the documents then. Well, those are the documents that are exhibited at RST. We're back where we started. Yes, John, that's correct. The documents come from the ether. You're not reaching into the ether. You're reaching into the documents which came from the ether. That's what you're saying. No, the documents didn't come from the ether either. The documents came from the bank in response to a summons that was issued by the government. But that it's circular because we don't know. You can argue Bates ranges and making certain assumptions based upon the spread of the Bates range. But there's nothing on Exhibit R. Is R contained in Exhibit U? Yes. And there's nothing in Exhibit U either. Is there to pinpoint it to an account number or to Mr. Bedrosian? I believe that that is correct, Your Honor. There's Exhibit U does not specifically name that particular set of account balances as being directly connected. And just for clarity, you used the certification of business records, correct? That's correct. It's the government that wants the penalty. You could make things a hell of a lot easier for us, you know. I understand, Your Honor. As regards to the appeal, we have the record that we have that was developed at the district court. And I think the point that I would like to emphasize is because of the abuse of discretion standard that applies here, it is Mr. Bedrosian's burden to demonstrate that there's an abuse of discretion here. And it's also Mr. Bedrosian's burden to demonstrate that if there was some error here, that that error was not harmless. But on the factual issue, it's the government's burden to lay a foundation tying Exhibit R to Mr. Bedrosian. Well, that's got to be the government's burden. The government could have proceeded with simply identifying the fact that this penalty was the penalty amount that had been assessed. Understood. I mean, the best argument you would have is the opening statement that I mentioned to Mr. Kaminsky that the counsel saying they concede at the time there was about two million dollars in the account. Well, I think, Your Honor, that that frankly is part of what went on here. That's part of the dynamics that happened before the trial in this case. There were cross motions for summary judgment and at no point in the prior proceedings had had Mr. Bedrosian objected to the penalty amount. As we point out in our brief, there were numerous times where Mr. Bedrosian made statements, including in his own statement of material facts in support of his motion for summary judgment. But the penalty amount the problem you run into is the district court didn't say the Bedrosian statements were judicial omissions. Well, I don't think that that that that's relevant necessarily for purposes of this appeal, Your Honor, because I don't think that the district court needed to say that. But the fact of the matter is this court can look at those statements and see that those are admissions. He stated in his own statement of material facts that the penalty was calculated as 50 percent of that balance as is indicated in Exhibit R. He admitted that that was how it was done. He admitted and never said that that was an improper method of doing that. And then again, at the argument, at the at the trial during his opening statement, he stated that they concede that the value in the account at the time was two million dollars. I mean, that that is a concession. That is the understanding that everybody had been operating under throughout the course of the proceedings that. And so I think that that is part of what led to the submission of that evidence as it came in at the trial. And Judge Smith, as you pointed out earlier, I believe not only did the did the amended 2007 FBAR indicate that the value of that account was over one million dollars, but in the brief on appeal at page 50 of Mr. Bedrosian admits to this court that the value of the account on June 30th, 2008, was at least a million dollars. That's in their brief that they admit that that was that the amount. And so I do agree with what your honor suggested earlier, which is that at a minimum. That should be the binding admission where the penalty can at least be five hundred thousand dollars. If if on remand, the government cannot establish the correct foundation for exhibit R as this court seems to be indicating it may go, certainly the government could rely on that statement and impose the penalty of five hundred thousand dollars. And as the statute is written, there are two options for the penalty. It's either 50 percent of the balance of the account or one hundred thousand dollars, whichever is greater. Now, Mr. Bedrosian has suggested that the penalty should be zero. And that clearly is incorrect under under the statute. It's either one hundred thousand dollars for 50 percent of the value of the account. And so if the court is inclined to to find that there was inadequate evidence of the government's decision making at the trial, then the proper method would be to remand to allow the government either to further develop the the record with respect to the penalty as it determined it or to recalculate and reimpose the penalty based upon at least those admissions of the million dollar value. I have nothing. OK, thank you. Mr. Comiskey. Yes, thank you. Thank you. Let me go back. The court below viewed this that they were viewing the penalty amount to no go. They did not view it that it was abuse of discretion. They were sitting as an appellate. This court had not ruled on that issue yet and still has not. Most of the other appellate courts have held that the district court just as an appellate court. And if they were sitting as an appellate court, the district court should not have excluded all the evidence that Mr. Bedrosian wanted to get into by way of a motion to eliminate as to what happened in terms of the penalty calculation. The reason the court doesn't have anything other than a sheet of paper with no tie in to Mr. Bedrosian because the court excluded the evidence by an eliminating motion. And there was not and nobody was permitted to get into it at the trial. And the government witness at the trial had no idea how the numbers were calculated. And there was a clear what was excluded by the motion before trial. There was a motion in limine seeking to have everything to enter into and to examine how the government computed the penalty. And the district court granted that motion for the government. So for the government now to come in and say, oh, everything's fine. You can just make some sort of estimate. Not everything. In fact, you conceded earlier in response to a question from me that the amended 2007 F-bar is in the record, right? Correct. And it does not have a high balance. It's a box. It's a checked box that speaks to an amount over $1 million. So what I want to know is given the fact that that is in the record, that I believe by your own concession in response to my question constitutes an admission. Why is it incorrect? As Mr. Alouis has indicated that this court could simply remand to the district court and the district court could take 50% of the $1 million pursuant to the statute and $500,000 would be the penalty. That's actually a softball as well, Your Honor. This is supposed to be an agency determination. I'm sorry. That is what I understand. That's supposed to be an agency determination from the IRS. There are mitigation guidelines that they can reduce the penalty based on mitigating factors. Every other case has- I'm not asking you about mitigation. I'm asking you why that would not be permissible. Because the IRS has to be given the opportunity to apply their mitigation factors whenever the penalty amount would otherwise be. That's our view. And it's an agency determination, Your Honor. They can give the maximum amount of the penalty, which they did so far. We weren't allowed to examine it. If it goes back to the IRS, the IRS can now say we're not sure if the maximum balance is and the IRS can take another look at whether Mr. Bedrosian's conduct, which has now been fleshed out by the trial- How does it get back to the IRS? That was not the position taken by your adversary a few minutes ago, nor was it my question. My question went simply to another remand to the district court confronted with the record as it exists, this admitted admission and a determination anew by Judge Bailson as to an appropriate penalty. Our view, Your Honor, after Schwartzbaum, which is the most recent case, the district court can't do that. It's got to go to the IRS for a new determination. I understand that, but your adversary said nothing about that and he certainly did not suggest anything about mitigation factors. There's no question he did not, but that is that is into the IRS view of what the appropriate penalty amount is. By the way, this just to finish up the admission point, so I run out of time. It's got to be- Make this point. I'm sorry, Your Honor. No, you're out of time now, but finish this point. It's got to be unequivocal to be admission. Again, the district court didn't adopt it. It's an opening statement is the best they got to rely on. Their course motion for summary judgment denied. We think that all goes out the window and this court at a minimum has to remand this case, not just to the district court, make a half million dollar penalty, but back to the IRS for its reconsideration based on numbers reflecting June 30th, 2007, when the 2008, when the 2007 FBAR was due. I thank the court for its time. Thank you, both of you gentlemen very much. You could win the battle, lose the war, could go back to the IRS and they could figure out what the heck exhibits you and exhibit our are and come back with a stiffer penalty. I guess you have some confidence that UBS's accounting system is not that sophisticated or accurate that it's not going to happen. But thank you very much. And we'll take that under advisement.